UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FLOW SCIENCES INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DUN & BRADSTREET CREDIBILITY CORPORATION, et al.,<br><br>Defendants. | C14-1404 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on a motion to dismiss, docket no. 75, brought by defendant Dun & Bradstreet Credibility Corporation ("DBCC"). Having reviewed all papers filed in support of, and in opposition to, DBCC's motion, the Court enters the following order.

**Background**

Plaintiff Flow Sciences Inc. brings this action on behalf of itself and a class of all entities in North Carolina that purchased DBCC's product known as CreditBuilder, which is an Internet-based system for credit self-monitoring. DBCC acquired CreditBuilder from defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (collectively, "D&B"), along with licenses to use the "Dun & Bradstreet" name, brand, logo, and trade dress. D&B collects financial information and issues credit reports, scores, and ratings

ORDER - 1

on businesses, which are used by the government, as well as private companies, to make contracting and other commercial decisions.  In connection with credit information, D&B uses the Data Universal Number System ("DUNS"), pursuant to which businesses are assigned unique identifiers.

According to plaintiff, when businesses contact D&B concerning any problem with their credit reports, they are "uniformly and seamlessly routed to a DBCC sales representative who tries to sell them CreditBuilder, rather than attempt to fix the problem."  Am. Compl. at ¶ 21 (docket no. 73).  Plaintiff does not allege, however, that it was solicited in this manner by DBCC.  Instead, plaintiff indicates that it received from DBCC marketing materials that bore the "Dun & Bradstreet" logo and that "positioned CreditBuilder as a unique D&B-related product."  _Id._ at ¶ 59.  Plaintiff does not describe how these marketing materials arrived.  Plaintiff also received both a telephone call and an e-mail in November 2012.  _Id._ at ¶¶ 60-63.  Plaintiff accuses the caller, Sandy Gilliam, of leading it to believe that she was calling on behalf of D&B, when she was, in fact, a DBCC salesperson.  _Id._ at 60.  The e-mail plaintiff received during the same time frame was from a DBCC "Expert Credit Advisor," who referred to plaintiff's "profile with Dun & Bradstreet Credibility Corp."  _Id._ at 61.  The e-mail represented that "_**we**_ get your company's profile updates" and "it 'is _**us**_ completing the necessary background checks on your company.'"  _Id._ (emphasis added).  In truth, however, only D&B updates profiles and performs background checks; DBCC does not engage in such work.  _Id._

In November 2012, both Gilliam and DBCC's Expert Credit Advisor told plaintiff that over 100 inquiries about plaintiff had been made by separate companies, when only

ORDER - 2

24 companies had actually made inquiries.  *Id.* at ¶ 62.  Plaintiff contends that, because D&B "seeded" its credit report with false information,[1] plaintiff "believed it had no choice" but to enroll in or purchase CreditBuilder.  *Id.* at ¶¶ 64-65.  Plaintiff bought CreditBuilder on November 14, 2012, for $1,599.00 plus an activation fee of $149.00.  *Id.* at ¶ 64.  Plaintiff alleges that it would not have purchased CreditBuilder had DBCC not held itself out as D&B and held CreditBuilder out as a "D&B solution."  *Id.* at ¶ 67.

Plaintiff further alleges that DBCC described CreditBuilder as "the solution to false entries" on its credit reports, and indicates that it would not have purchased the product but for such representation.  *Id.* at ¶¶ 68.  Plaintiff asserts that, despite purchasing CreditBuilder, false items continued to appear on its credit report, including inquiries manufactured by D&B and inaccurate notations of "slow pays" and amounts past due.  *Id.* at ¶¶ 69-71.  Plaintiff has brought two claims against DBCC, namely violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and negligent misrepresentation.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), DBCC has moved to dismiss both claims.

**Discussion**

**A.**    **Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

---

[1] Plaintiff concedes that DBCC was not advised by D&B of any actions taken by D&B to inflate the number of credit inquiries about a business, which would negatively impact its credit rating.  *See* Am. Compl. at ¶¶ 6, 53, & 55 (docket no. 73).

ORDER - 3

contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  *Id.*  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id.* at 558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *E.g.*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *Twombly*, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

B.   **Unfair and Deceptive Trade Practices Act**

North Carolina has declared unlawful "[u]nfair methods of competition in or affecting commerce" and "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).  Commerce includes "all business activities, however denominated," except for "professional services rendered by a member of a learned profession." *Id.* at § 75-1.1(b).  A civil action for violation of the UDTPA may be commenced by "any person . . . injured," or by "any person, firm or corporation" whose business is "broken up, destroyed or injured," as a result of or "by reason of" the

ORDER - 4

alleged violation.  N.C. Gen. Stat. § 75-16; see Nobel v. Hooters of Greenville (NC), LLC, 681 S.E.2d 448, 451 (N.C. Ct. App. 2009).  A prevailing plaintiff is entitled to three times the amount of any damages assessed by a jury; the right to treble damages is not subject to judicial discretion.  N.C. Gen. Stat. § 75-16; see Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 715 (4th Cir. 1983); Marshall v. Miller, 276 S.E.2d 397, 402 (N.C. 1981).  Under the UDTPA, a prevailing plaintiff or a prevailing defendant may recover attorney fees from the losing party if the Court finds:  (i) the party who violated the UDTPA did so willfully or unwarrantedly refused to fully resolve the matter; or (ii) the party instituting the action knew, or should have know, it was frivolous and malicious.  N.C. Gen. Stat. § 75-16.1.

UDTPA claims may be based on either an underlying contract or an allegation of fraud or misrepresentation.  LFM Real Estate Ventures, LLC v. SunTrust Bank, 2012 WL 6114242 at *9 (W.D.N.C. Dec. 7, 2012).  When pursuing a UDTPA claim premised on a related breach of contract, a plaintiff must show some egregious or aggravating factor accompanying the alleged breach.  Id.; see Carcano v. JBSS, LLC, 684 S.E.2d 41, 49-50 (N.C. Ct. App. 2009).  In this case, plaintiff does not base its UDTPA claim on any breach of contract by DBCC.

When asserting a fraud or misrepresentation theory with respect to a UDTPA claim, a plaintiff must prove that the defendant's words or conduct had "the tendency or capacity to mislead" or created "the likelihood of deception."  LFM Real Estate, 2012 WL 6114242 at *10; see Noble, 681 S.E.2d at 452.  The UDTPA does not define the terms "unfair" or "deceptive," but whether an act or practice qualifies as unfair or

ORDER - 5

deceptive is viewed by North Carolina courts as a question of law.  <u>Noble</u>, 681 S.E.2d at 452; <u>see Carcano</u>, 684 S.E.2d at 50.  The concept of "unfair" is broader than and includes "deception," and an act or practice may be deemed "unfair" when "it offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  <u>Rice v. Vitalink Pharm. Servs., Inc.</u>, 124 F. Supp. 2d 343, 348 (W.D.N.C. 2000); <u>see Carcano</u>, 684 S.E.2d at 50.  The relevant gauge is the effect of the defendant's conduct on the marketplace, <u>Carcano</u>, 684 S.E.2d at 50, and an important consideration is whether the defendant engaged in conduct amounting to "an inequitable assertion of its power or position," <u>Noble</u>, 681 S.E.2d at 452.

        Having reviewed the operative pleading, the Court is satisfied that plaintiff has sufficiently alleged a plausible claim under the UDTPA.  Plaintiff contends that, in one communication, DBCC misrepresented its identity, leading plaintiff to believe it was, in fact, D&B, and that, in another communication, DBCC misrepresented its involvement in updating plaintiff's profile and completing the necessary background checks, which are functions performed only by D&B.  Whether plaintiff can support these allegations with credible evidence is not the question before the Court; for purposes of DBCC's motion, the Court must assume as true plaintiff's assertions that it was affirmatively misled about the source and nature of the solicitations and that, it would not have otherwise bought CreditBuilder.  Moreover, because the telephonic and e-mail communications occurred just days before plaintiff purchased CreditBuilder, the Court concludes that plaintiff has sufficiently pleaded the requisite proximate cause relationship.  <u>See id.</u> (indicating that an element of a UDTPA claim is that the alleged unfair or deceptive act or practice

ORDER - 6

"proximately caused actual injury to the plaintiff or to his business").  Thus, as to plaintiff's UDTPA claim, DBCC's Rule 12(b)(6) motion to dismiss is DENIED.

C.       **Negligent Misrepresentation**

North Carolina has adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts.  *Brinkman v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40, 43 (N.C. Ct. App. 2003); *see Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 513 S.E.2d 320, 323-24 (N.C. 1999).  The Restatement indicates:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

RESTATEMENT (SECOND) OF TORTS § 552 (AM. LAW. INST. 1977).

To the extent that plaintiff relies on the telephonic and e-mail communications underlying its UDTPA claim, the Court is persuaded that plaintiff has adequately pleaded a claim for negligent misrepresentation.  Plaintiff contends that one DBCC employee

ORDER - 7

misidentified herself as calling on behalf of D&B and that another DBCC employee misrepresented the nature of DBCC's business.  Reasonable inferences can be drawn from plaintiff's allegations that the statements at issue were made without exercising reasonable care or competence and that plaintiff justifiably relied on them.  Thus, with regard to plaintiff's claim for negligent misrepresentation, DBCC's motion to dismiss is DENIED.[2]

**Conclusion**

For the foregoing reasons, DBCC's Rule 12(b)(6) motion to dismiss, docket no. 75, is DENIED.  The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 19th day of October, 2015.

Thomas S. Zilly
United States District Judge

---

[2] In Count II of the Amended Complaint, plaintiff lists fourteen (14) misrepresentations allegedly made by DBCC.  The Court declines to parse which of these misrepresentations relate to the telephonic and e-mail communications between plaintiff and DBCC, and therefore makes no ruling concerning whether some of these allegations recount mere puffery or are otherwise not actionable.

ORDER - 8